IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARY KAY HILLS, et al.

    Plaintiffs,

    v.

JACK C. HURST, et al.,

    Defendants.

No. Civ. 03-2194 DFL GGH

ORDER

Plaintiffs seek wrongful death damages from defendant United States of America for the death of Roger Hills. The United States moves for summary judgment, arguing that it is immune from liability under the discretionary function exception to the Federal Tort Claims Act ("FTCA"). Alternatively, the United States argues that plaintiffs' proffered evidence fails to prove negligence. For the reasons discussed below, the motion for summary judgment is DENIED.

I.

Plaintiffs' wrongful death action arises out of a construction site accident in which a dump truck full of asphalt

1

backed over decedent Hills, who was an inspector on the project employed by PBS&J Construction Services, Inc.  (Compl. ¶ 10.)  At the time of the accident, the project was under the primary control of Contri Construction Company ("Contri"), an independent contractor hired by the Central Federal Lands Highway Division ("CFLHD") of the Federal Lands Highway Program ("FLH").  (Id. ¶¶ 15, 16.)  CFLHD's administered the construction contract.  (Id. ¶ 11.)  CFLHD's primary onsite representative was its Project Engineer, Orrin Lee ("Lee").  (Id. ¶¶ 11, 12.)  As Project Engineer, Lee had the duty to address actual safety hazards.  (Greenwell Decl. ¶ 9.)  He was to notify the Contractor in writing if he "bec[a]me aware of hazardous conditions which result from the Contractor's known or possible violation of either OSHA regulations, or reasonable standards of construction safety practice, as determined by the Project Engineer."  (UMF ¶ 76.)

   Lee was not at the project site when the accident occurred.  (Id. ¶ 42.)  Lee testified that he worked with Hills on a "day-to-day basis" and considered Hills a competent inspector.  (Perez Supplemental Decl. Ex. A, 24:10, 29:11-13.)  Lee recognized that Hills wore hearing aids and was missing an arm.  (Id. at 29:14-16, 85:11-12.)  Nevertheless, Lee avers that he never considered Hills a safety risk and never saw him act in an unsafe way.  (Id. at 34:17-19, 49:1-2.)  He also states that no one ever told him that Hills was a safety risk.  (Id. at 34:10-16.)

   Plaintiffs present the testimony of six witnesses who worked

with Hills. These witnesses testified that Hills was incompetent and "always in the way." (Pls.'s UMF ¶ 9.) Some witnesses also testified that they informed Lee that Hills often parked his truck in inappropriate, unsafe locations. (Id. ¶¶ 19, 20; Donahue Decl. Ex. 2, 13:10.)

## II.

The Federal Tort Claims Act ("FTCA") provides for jurisdiction over "claims against the United States . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). However, the United States is immune from "[a]ny claim based upon . . . the exercise or performance or the failure to exercise or perform a discretionary function or duty." 28 U.S.C. § 2680(a).

Plaintiffs allege that Lee, an employee of the United States, created an unsafe work environment that caused Hills' death, thereby violating the FTCA. (Compl. ¶ 16.) The United States contends that its actions regarding safety on the project are "immune from challenge because they implicate discretionary judgments grounded in public policy." (Mot. at 1.)

At oral argument, plaintiffs conceded that the United States is not liable under the FTCA for contracting the work, selecting Contri, or for improperly training its employees. Rather, plaintiffs' sole contention is that Lee was negligent because he was aware that Hills was a safety hazard to himself and to

3

others, and he failed to fulfill his duty to inform Contri of the problem. Plaintiffs claim that Lee's failure to deal with the Hills problem was not a discretionary judgment grounded in policy, and therefore, his conduct is not within the discretionary function exception. (Opp'n at 8.)

A. <u>Discretionary Function Exception</u>

The Supreme Court has developed a two-part test to determine when the discretionary function exception applies. <u>Whisnant v. United States</u>, 400 F.3d 1177, 1180 (9th Cir. 2005) (citing <u>United States v. Gaubert</u>, 499 U.S. 315, 322-25 (1991); <u>Berkovitz v. United States</u>, 486 U.S. 531, 536-37 (1998)). First, the United States has the burden to prove that its actions were discretionary and involved "an element of judgment or choice." <u>Berkovitz</u>, 486 U.S. at 536; <u>Whisnant</u>, 400 F.3d at 1181. Actions are not discretionary if they violate "a mandatory statute, policy, or regulation." <u>Id.</u> at 1180-81. If the actions were discretionary, courts then ask if the challenged action "involved 'political, social [or] economic judgments' that are the unique province of the Government." <u>Marlys Bear Med. v. United States</u>, 241 F.3d 1208, 1214 (9th Cir. 2001) (quoting <u>Berkovitz</u>, 486 U.S. at 539).

The Ninth Circuit has "generally held that the design of a course of governmental action is shielded by the discretionary function exception, whereas the implementation of that course of action is not." <u>Id.</u> at 1181. In addition, safety judgments "are rarely considered to be susceptible to social, economic, or

1 political policy." Id. "[S]afety measures, once undertaken,
2 cannot be shortchanged in the name of policy." Id. at 1182
3 (citing Bear Med., 241 F.3d at 1215, 126-17).

4 　　Thus, while the design of a road without guardrails is "a
5 choice grounded in policy considerations . . . maintaining the
6 road [is] a safety responsibility not susceptible to policy
7 analysis." Id. at 1181 (citing ARA Leisure Servs. v. United
8 States, 831 F.2d 193, 195 (9th Cir. 1987)). Likewise, the
9 decision not to line an irrigation canal with concrete is a
10 policy choice, but failing to remove unsuitable materials during
11 construction is not. Id. (citing Kennewick Irrigation Dist. v.
12 United States, 880 F.2d 1018, 1027-28, 1031 (9th Cir. 1989)). As
13 applied to the facts here, the analogous syllogism would be as
14 follows: the decision to accept certain safety responsibilities
15 and place them in the project engineer is discretionary; however,
16 the project engineer's failure to adequately discharge these
17 responsibilities is not.

18 　　Nevertheless, the United States argues that the facts of
19 this case are analogous to those in United States v. S.A. Empresa
20 De Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797
21 (1984). In Varig, the FAA developed a certification process for
22 ensuring that aircraft manufacturers complied with minimum safety
23 standards. Under the certification process, aircraft
24 manufacturers had the duty to ensure that aircrafts conformed to
25 FAA safety regulations. Manufacturers were required to develop
26 plans and specifications and to perform necessary inspections and

tests. The FAA then reviewed the data by conducting a "spot check" of the manufacturers' work.

The <u>Varig</u> case arose from a fire that broke out on one of the inspected airplanes. Plaintiffs alleged that the lavatory trash receptacle did not satisfy applicable safety regulations. They further alleged that the United States was negligent in certifying the airplane. The Supreme Court held that the United States was immune from liability under the discretionary function exception. <u>Id.</u> at 821. It reasoned that the FAA's decision to use a "spot-checking" program "best accomdate[d] the goal of air transportation safety and the reality of finite agency resources." <u>Id.</u> at 820. To follow through with its goals, the FAA necessarily had to choose which specific items to check in the certification process. <u>Id.</u> The Court concluded that the decision to exclude certain items from inspection was a discretionary policy decision rather than a failure to implement existing policy. <u>Id.</u>

The United States argues that, in this case, the government contracts created a "spot-check" system similar to that created by the FAA in <u>Varig</u>. This contention fails, however, because the FLH Construction Manual specifically required Lee to report safety hazards when he became aware of them. (UMF ¶ 76.) It did not create a spot-check system. Unlike the FAA investigator, Lee did not have the discretion to choose which safety violations to report. Rather, he was required to notify Contri of all possible violations of reasonable construction practices of which he

6

became aware.

The case here is more analogous to <u>Marlys Bear Medicine v. United States</u>. In <u>Marlys Bear</u>, plaintiffs alleged that the Bureau of Indian Affairs ("BIA") negligently supervised and managed safety of its logging operation on an Indian reservation. The BIA contracted with an independent contractor to conduct the logging operations. However, it retained the right to inspect and suspend the operation if the contractor failed to comply with the contract. The court found that safety monitoring was not a discretionary function: "[t]he government cannot claim that both the decision to take safety measures and the negligent implementation of those measures are protected policy decisions." <u>Id.</u> at 1215.

Here, the FLH assumed a duty similar to the BIA's. While FLH employees were not required to inspect the site, FLH policy instructed them to take specific action if they had actual knowledge of a possibly hazardous condition. Based on <u>Marlys Bear</u>, the United States is not immune from liability for failure to fulfill this non-discretionary function.

B.  <u>Disputed Issues of Material Fact</u>

The United States argues alternatively that plaintiffs have not presented sufficient evidence to prove that Lee failed to fulfill his duty. (Reply at 2.) The United States notes that none of the witnesses indicated that Lee was actually aware of the events they described. (<u>Id.</u> at 5-11.) Their discussions with Lee related only to where Hills parked his truck rather than

where Hills tended to walk. (Id.) The United States concludes that if Lee was not specifically aware that Hills was careless where he walked, he had no duty to take any action regarding any hazard posed by Hills. (Id.)

However, plaintiffs need not present facts relating to Hills' propensity to walk behind moving trucks to survive summary judgment. The FLH policy states that Lee was obligated to notify the contractor if he became aware of hazardous conditions. (UMF ¶ 76.) The circumstantial evidence presented by plaintiffs could lead a reasonable fact finder to conclude that Lee was aware that Hills posed a safety hazard in general and should have notified Contri so that Contri could have Hills removed from the site. This is sufficient to establish both negligence and causation.

### III.

For the reasons stated above, the court DENIES the United States' motion for summary judgment.

IT IS SO ORDERED.

Dated: 1/30/2006

_____
DAVID F. LEVI
United States District Judge